Dissenting opinion filed by Circuit Judge NEWMAN.
LOURIE, Circuit Judge.
Ethicon, Inc. (“Ethicon”) appeals from the U.S. Patent and Trademark Office (“PTO”) Patent Trial and Appeal Board’s (“the.Board’s”) decision in a merged inter partes reexamination affirming the examiner’s obviousness rejection of claims 1-17 and 19-23 of U.S. Patent 7,591,844 (“the ’844 patent”). See Boston Sci SCIMED v. Cordis Corp., No. 2014-008135, 2015 WL 883933 (P.T.A.B. Feb. 27, 2015) {“Decision”). Because the Board did not err in its obviousness conclusion, we affirm.
BACKGROUND,
Ethicon owns[1] the ’844 patent, which relates to intraluminal medical devices for *1347 the local delivery of drugs, e.g., drug-elut-ing stents, and methods for maintaining drugs on those devices. ’844 patent col. 111. 21-31, col. 5 11. 50-57. Angioplasty can be used to alleviate blockages of blood vessels. Id. col. 1 11. 33-46. However, expansion of the balloon catheter during angio,-plasty can result in injury to the smooth muscle cells within the vessel wall, which can lead to restenosis, the gradual re-closure of the vessel. Id. col. 11. 46-col. 21. 45. The ’844 patent teaches that stent coatings themselves, and stent coatings delivering drugs locally, may be capable of reducing restenosis. Id. col. 4 11. 43-54. The ’844 patent teaches that previously “[s]tents with coatings made from polyvi-nylidenefluoride [VDF] homopolymers and containing pharmaceutical/therapeutic agents or drugs for release have' been suggested.” Id. col. 511. 4-6.
Claim 1 is representative of the challenged claims and reads as follows:
1. A device for intraluminal implantation in a vessel comprising a balloon-expandable stent and a pharmaceutical agent-containing coating, said coating comprising a biocompatiblé polyfluoro copolymer ' that comprises about eighty-five weight percent vinylidine-fluoride [VDF] copolymerized' with about fifteen weight percent hexafluo-ropropylene [HFP] and at least one pharmaceutical agent intermixed with said copolymer, wherein said coating has not been subjected to a maximum temperature greater than 60° C. [sic] during the coating process or afterward, thereby providing an adherent coating that remains adhered to the device upon expansion of the balloon-expandable stent.
’844 patent col. 371. 59-col. 38 1. 3.
Ethicon sued Boston Scientific SCIMED (“Boston Scientific”) and Abbott Laboratories (“Abbott” and, collectively with Boston Scientific, “Requesters”) in the" United States District Court for the District of New Jersey-on allegations of, inter alia, infringement of the ’844 patent.- Subsequently, in 2010, the Requesters each filed separate requests for inter partes reexamination of the ’844 patent. The PTO merged and granted the requests for inter partes reexamination.
During the reexamination, Ethicon can-celled claims 18 and 24 by amendment. The examiner rejected remaining claims 1-17 and 19-23 as obvious over, inter alia, U.S. Patent 5,824,048 (“Tuch”), U.S. Patent 4,816,339 (“Tu”), and U.S. Patent 3,178,399 (“Lo”), and relied on a translation of Fr. Patent 2,785,812 (“Le Morel”) to reject certain dependent claims. The examiner found that the evidence submitted by Ethicon regarding objective indicia of nonobviousness was insufficient to outweigh the conclusion of obviousness. Ethi-con appealed to the Board, arguing that the examiner erred in combining the prior art references and by discounting the objective indicia. . '
Tuch discloses intravascular stents, including balloon-expandable stents, with a coating on the tissue-contacting surface that includes a polymer and a drug. Tuch col. 2 11. 35-42, col. 4 11.10-13. Tu discloses implantable medical devices such as vascular grafts and heart valve leaflets made from a multi-layered polytetrafluoroethy-lene/elastomer material. Tu col. 111. 21-32. Tu lists VDF:HFP copolymer first in its list of potential elastomers, id. col, 4 11. 30-32, and states that the elastomer may contain drugs, e.g., heparin, for release into the surrounding environment, id. col. 9 11. 65-68. Lo discloses properties of VDF:HFP copolymer at various weight ratios, including 85:15. Lo Fig. 1, col. 9 11.15-36. Le Morel discloses stents with a VDF:HFP coating. J.A, 10748-49.-
The-Board affirmed -the examiner’s rejection of claims 1-17 and 19-23 as obvi *1348 ous. The Board began its analysis with Tuch and found that Tuch teaches that the polymer in the coating may be either biostable or bioabsorbable and lists VDF as an example of a suitable biostable polymer. Decision, at *4. The Board also found that Tuch teaches that its list of polymers, which includes “vinyl halide polymers and copolymers,” is not exhaustive and that Tuch’s teachings would not have limited a skilled artisan to the explicitly listed polymers or dissuaded a skilled artisan from selecting a VDF copolymer. Id. at *7.
The Board additionally found that Tuch discloses “a problem with coatings with low elasticity,” id. at *10, and that biocom-patibility and elasticity are “useful” characteristics for the polymer in its stent coatings, id. at *9. See also id. at *4-5. The Board found that “[sjince Tuch teaches a problem with cracking when materials having little elasticity are utilized in the polymer layer, one of ordinary skill in the art would have reasonably sought materials with high elasticity to avoid the problem when the stent is expanded.” Id. at *9.
The Board then analyzed Tu and Lo in light of Tuch’s teachings. Tu states that “[i]t is not desired to have the elastomer permeate the poly(tetrafluoroethy-lene)/elastomer layer and migrate into the lumen.” Tu col. 8 11. 40-43. The Board found that this statement only relates to a particular embodiment and that' Tu also teaches that the poly(tetrafluoroethy-lene)/elastomer layer can be used in medical devices such as heart valve leaflets where the VDF:HFP elastomer would be in contact with blood. Decision, at *5, *8. The Board additionally found that Tu teaches that VDF:HFP copolymer possesses the useful properties of biocompati-bility and elasticity taught by Tuch and that it is also useful for coatings containing a therapeutic substance. Id. at *5, *9-10.
The Board similarly found that Lo teaches that 85:15 VDF:HFP “is advantageous with respect to flexibility, elasticity, extensibility, tensile strength, and reverse elongation.” Id. at *10. The Board found that a skilled artisan would have been motivated to use 85:15 VDF-.HFP, possessing these advantageous properties, as the polymer in Tuch’s stent because “Tuch teaches a problem with coatings with low elasticity.” Id. The Board also found that “the skilled worker would have reasonably consulted Lo to determine the optimal concentrations for each component, even if Lo does not teach the use of VDF:HFP for medical implants.” Id.
The Board also considered Ethicon’s evidence regarding objective indicia of nonob-viousness but found that none of it was entitled to substantial weight. Ethicon alleged copying by the Requesters and pointed to the alleged commercial success of, unexpected results obtained by, and industry praise for certain stents sold by the Requesters to support its argument that the claims would not have been obvious.
The Board found that Ethicon did not submit factual evidence or analysis to support its copying allegations and thus gave them “little weight.” Decision, at *11. The Board similarly found that the evidence submitted did not establish that the alleged commercial success, industry praise, or unexpected results were due to the claimed 85:15 VDF:HFP coating rather than to an unclaimed feature such as the drug or stent design. Id. at *11-14. Regarding unexpected results, the Board also found that Ethicon did not establish that the comparisons relied on were to the closest prior art or provide an expert opinion that the results pointed to would have been unexpected. Id. at *13-14,
The Board also concluded that under KSR International Co. v. Teleflex Inc., 550 U.S. 398, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007), “even if Tuch did not disclose a *1349 problem with its polymers, one of ordinary skill in the art would have found it obvious to have employed the.known polymers of Tu and Lo for their known and expected properties” and that “the reason to combine [the references] could be provided by tide ‘normal desire of scientists or artisans to improve upon what is already generally known.’” Decision, at *6 (quoting In re Peterson, 315 F.3d 1325, 1330 (Fed. Cir. 2003)).
Ethicon timely appealed, and the Director of the PTO (the “Director”) intervened pursuant to 35 U.S.C. § 143, filing a brief and participating in oral argument. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).
Discussion
Our review of a Board decision is limited. In re Baxter Int’l, Inc., 678 F.3d 1357, 1361 (Fed. Cir. 2012). We review the Board’s legal determinations de novo, In re Elsner, 381 F.3d 1125, 1127 (Fed. Cir. 2004), but we review the Board’s factual findings underlying those determinations for substantial evidence, In re Gartside, 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed 126 (1938).
Obviousness is a question of law, based on underlying factual findings, including what a reference teaches, whether a person of ordinary skill in the art would have been motivated to combine the references, and any relevant objective indicia of nonobviousness. Apple Inc. v. Samsung Elecs. Co., 839 F.3d 1034, 1047-48, 1051 (Fed. Cir. 2016) (en banc).
The Supreme Court has cautioned that the obviousness inquiry must “guard against slipping into use of hindsight and ... resist the temptation to read into the prior art the teachings of the invention in issue.” Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 36, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (internal citations and quotations omitted). The Court has also instructed that “when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result.” KSR, 550 U.S. at 416, 127 S.Ct. 1727. Similarly, § 103 likely bars patentability unless “the improvement is more than the predictable use of prior art elements according to their established functions.” Id. at 417, 127 S.Ct. 1727.
Generally, a skilled artisan would only have been motivated to combine analogous art. Prior art is analogous where either (1) “the art is from the same field of endeavor, regardless of the problem addressed” or (2) even if the reference is not within the same field of endeavor, “the reference still is reasonably pertinent to the particular problem with which the inventor is involved.” In re Clay, 966 F.2d 656, 658-59 (Fed. Cir. 1992) (citation omit-' ted). Whether a reference is analogous art is a question of fact. Id. at 658.
Ethicon argues that the Board’s obviousness rejection impermissibly relies on hindsight and fails to provide any reason why one of ordinary skill in the art would have combined the prior art references to create the claimed invention. Specifically, Ethicon argues that Tuch provides no motivation to select polymers other than those it describes and that neither Tuch nor Tu provide a motivation to select VDF or VDF:HFP as the polymer coating. Additionally, Ethicon faults the Board for not making certain fact findings relating to the motivation to combine references.
The Director responds that substantial evidence supports the Board’s factual find *1350 ings, and the Board’s obviousness conclusion was proper under KSB. The Director contends that the claimed invention is merely the simple substitution of a coating (VDF:HFP) known to be useful in in vivo applications, including stents, in a weight ratio (85:15) known to provide a good balance between strength and elasticity, for the VDF coating disclosed in Tuch. The Director contends that Ethicon’s arguments are contrary to the .teachings of the references and not supported by applicable law.
We agree with the Director that substantial evidence supports the Board’s factual findings. KSR directs that an explicit teaching, suggestion, or motivation in the references is not necessary to support a conclusion of obviousness. 550 U.S. at 415-16, 127 S.Ct. 1727. The Supreme Court has instructed that “a court must ask whether the improvement is more than the predictable use of prior art elements according to their established-functions,” id. at 417, 127 S.Ct. 1727, and apply “an expansive and flexible approach” to obviousness, id. at 415, 127 S.Ct. 1727.
Here, the Board made sufficient factual findings under the circumstances to support its obviousness conclusion and those findings are supported by substantial evidence. Tuch teaches that the polymer must be “biocompatible,” Tuch col. 5 11. 14-16. Tuch explains that coating overlayers “made with materials which have little elasticity ... can sustain significant cracking during [stent] deformation” and that such cracking can result in more rapid elution of drugs. Id. col. 7 11. 11-15. Tuch teaches that “inclusion of a polymer in intimate contact with a drug on' the stent allows the drug to be rétained on the stent in a resilient[, ie., elastic,] matrix during expansion of the stent and also slows the administration of drug following implantation.” Id. col. 2 11. 42-46. Those teachings constitute substantial evidence supporting the Board’s findings that Tuch teaches that elasticity and biocompatibility are useful polymer characteristics and that coatings with low elasticity are problematic.
The Board relied on Tu and Lo' for teachings regarding an 85:15 weight ratio of VDF:HFP. Tu teaches that the elastomer “promotes the, elasticity [and] strength” of the medical devices, Tu col. 3 11. 61-64, and lists VDF:HFP first in its list of preferred elastomers, id. at col. 411. 30-32. Lo similarly teaches VDF:HFP copolymers with “varying degrees of flexibility, elasticity and extensibility,” Lo col. 2 11. 33-48, and that a weight ratio of 85:15 VDF:HFP achieves the optimal combination of tensile strength and reversible elongation, id. Fig. 1, col 9 11. 15-36. These teachings of all of the required components of the claims support the Board’s combination of the three references tó address the problem regarding elasticity taught by Tuch.
Ethicon also challenges certain factual findings .made by the Board regarding the references. First, Ethicon contends that Tuch never suggests that the elasticity of the polymer itself is an important characteristic and asserts that it teaches away from using non-bioabsorbable coatings such as VDF:HFP by recommending bioabsorbable polymers. Second, Ethicon asserts that Tu is directed to medical devices other than stents and teaches away from allowing an elastomeric polymer such as VDF:HFP to be in contact with blood. Third, Ethicon argues that Lo is decades old, nonanalogous art that provides no motivation to combine its teachings with medical devices. Ethicon asserts that Lo is directed to coatings for harsh, industrial applications, not implantable medical devices.
The Director responds that the challenged factual findings are supported by substantial evidence. First, the Director contends that Ethicon’s arguments are *1351 contrary to the teachings of Tuch. Second, the Director asserts that Ethicon ignores the similar properties shared by coatings suitable for the devices disclosed by Tu and the ’844 patent and ignores embodiments in Tu that teach that the blood contacting layer can comprise VDF:HFP. Third, the Director contends that Ethicon ignores that Lo discloses properties of VDF:HFP that would have been relevant to a skilled artisan considering a coating on a stent and that Lo’s age is irrelevant absent a showing of long-felt need or the failure of others. .
We agree with the Director .that substantial evidence supports the- challenged findings. First, as discussed above, substantial evidence supports the Board’s findings that Tuch teaches that elasticity is a useful polymer characteristic and that coatings with low elasticity are problematic. Additionally, Tuch teaches that its “polymer may be either a biostable or bioabsorbable polymer,” Tuch col. 5 11. 16-17 (emphasis added), and lists VDF as an example of a suitable biostable polymer, id. col. 5 11. 33-53. Although Tuch states that a “bioabsorbable polymer is probably more desirable,” id, col. 5 11, 19, this statement, absent clear discouragement from use, does not compel a finding that Tuch teaches away from using VDF:HFP as a stent coating. See Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc., 774 F.3d 968, 977 (Fed. Cir. 2014) (‘Yet simply because the curved blade configurations are not preferred embodiments does not result in the Davison patent teaching away from, use of a curved blade, ‘absent clear discouragement of that combination.’ ” (quoting Santarus, Inc. v. Par Pharm., Inc., 694 F.3d 1344, 1356 (Fed. Cir. 2012))); see also In re Applied Materials, Inc., 692 F.3d 1289, 1298 (Fed. Cir. 2012) (“A reference must be considered for everything that it teaches, not simply the described invention or a preferred embodiment.”).
Second, although Tu states that “[i]t is not desired to have the elastomer permeate the poly(tetrafluoroethy-lene)/elastomer layer and migrate into the lumen,” Tu col. 8 11. 40-43, substantial evidence supports the Board’s finding limiting this statement to a particular embodiment and its finding that Tu teaches that the elastomer can be in contact with blood. Tu teaches that its invention has a “very broad application in biomedical devices, such as ,, heart valve leaflets,” id. col. 2 11. 36-40, and an alternative embodiment where the “combination of layers provides for better hydrophilicity due to the elas-tomer in the luminal layer,” id. col. 9 11. 56-60. See also id. col. 1 11. 27-32, col. 9 11. 65-68.
Third, we can discern no error in the Board’s reliance on Lo. The ’844 patent states that “[i]t would be advantageous to develop coatings for implantable medical devices ... that possess physical and mechanical properties effective for use in such devices_” ’844 patent col. 5 11. Ills. The Board relied on Lo for “teaching the properties of VDF:HFP” at different ratios of copolymer. Decision, at *10. Substantial evidence supports finding that Lo’s teachings are at least “reasonably pertinent to the particular problem with which -the inventor is involved,” In re Clay, 966 F.2d at 659, and that a skilled artisan would have combined those teachings with Tuch and Tu. The normal desire of artisans to improve upon what is already generally known can provide the motivation to optimize variables such as the percentage of a known polymer for use in a known device. See In re Peterson, 315 F.3d at 1330; see also KSR, 550 U,S. at 421, 127 S.Ct. 1727 (“A person of ordinary skill is also a person of ordinary creativity, not an automaton.”).
Furthermore, the age of Lo does not undermine the Board’s reliance on it *1352 for teaching the ratio of the copolymer components. “The mere age of the references is not persuasive of the unobviousness of the combination of their teachings, absent evidence that, notwithstanding knowledge of the references, the art tried and failed to solve the problem.” In re Wright, 569 F.2d 1124, 1127 (CCPA 1977) (citation omitted). Ethicon presented no evidence of a long-felt need or the failure of others.
Finally, Ethicon argues that the Board erred by discounting its proffered objective indicia of nonobviousness. Ethicon asserts that copying, commercial success, industry praise, and unexpected results support the nonobviousness of the ’844 patent.
The Director responds that Ethicon’s evidence regarding objective indicia is insufficient to overcome the prima facie case of obviousness. The Director contends that Ethicon’s arguments have scant support in the record and that the Board’s factual findings are supported by substantial evidence.
We agree with the Director that the Board properly weighed Ethicon’s evidence of objective indicia. Ethicon relied solely on its expert’s conclusory testimony to support its copying allegations. J.A. 3763. Regarding unexpected results, Ethi-con’s expert never even opined that the results pointed to would have been unexpected to a person of ordinary skill in the art. J.A. 3764. Moreover, the Board’s finding that the evidence relied on by Ethicon to support its claims of commercial success, industry praise, and unexpected results did not establish that any success, praise or unexpected results were due to the 85:15 VDF:HFP coating, rather than to an unclaimed feature such as the drug or stent design, is supported by substantial evidence. See J.A. 3763-64; J.A. 4200-05. We can discern no reversible error in the Board’s findings.
CONCLUSION
We have considered all of Ethicon’s remaining arguments, but conclude that they are without merit. The Board’s decision was supported by substantial evidence and was not erroneous as a matter of law. For the reasons set forth above, we affirm the Board’s decision.
AFFIRMED

. During the pendency of this appeal, Cordis Corporation assigned the '844 patent to Ethi-con. For simplicity, we refer to the owner of the '844 patent throughout as Ethicon.