NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**3G LICENSING, S.A.,**
*Appellant*

**v.**

**HONEYWELL INTERNATIONAL INC., SIERRA WIRELESS, ULC, FKA SIERRA WIRELESS, INC., TELIT CINTERION DEUTSCHLAND GMBH, FDBA THALES DIS AIS DEUTSCHLAND GMBH,**
*Appellees*

_____

2023-1557

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-01141.

_____

Decided:  December 10, 2024

_____

ANDREW PETER DEMARCO, Devlin Law Firm LLC, Wilmington, DE, argued for appellant.  Also represented by TIMOTHY DEVLIN, ROBERT J. GAJARSA.

DANIEL TYLER KEESE, Perkins Coie LLP, Portland, OR, argued for all appellees.  Appellee Sierra Wireless, ULC also represented by AMANDA TESSAR, Denver, CO.

JEFFREY R. GARGANO, K&L Gates LLP, Chicago, IL, for appellee Honeywell International Inc. Also represented by BRIAN PAUL BOZZO, Pittsburgh, PA; ERIK HALVERSON, San Francisco, CA.

GUY YONAY, Pearl Cohen Zedek Latzer Baratz LLP, New York, NY, for appellee Telit Cinterion Deutschland GmbH. Also represented by KYLE AUTERI, I.

---

Before LOURIE, REYNA, and HUGHES, *Circuit Judges*.

LOURIE, *Circuit Judge*.

3G Licensing, S.A., ("3G") appeals from a final written decision of the United States Patent and Trademark Office Patent Trial and Appeal Board ("the Board") holding claims 34–40 of U.S. Patent 7,215,653 ("the '653 patent") unpatentable as obvious. *Honeywell Int'l, Inc., v. 3G Licensing S.A.*, No. IPR2021-01141, 2023 WL 157065 (P.T.A.B. Jan. 11, 2023) ("*Decision*"). For the reasons provided below, we *affirm*.

## BACKGROUND

The now-expired '653 patent is directed to a mobile communications system for controlling data transmission between a base station and a mobile station (*e.g.*, a cellphone). '653 patent, Abstract, col. 1 ll. 16–33. A base station is the anchor-point of a network that allows a cellphone to access a cellular network, typically a cell tower. *Id.* col. 1 ll. 31–33. Representative claim 34 of the '653 patent recites, in relevant part:

34. A mobile station apparatus for use in a mobile communications system for controlling a data transmission rate on a reverse link, the apparatus comprising:

. . .

> control means connected with the receiving means adapted to control the data transmission rate based on the data rate control command, *wherein a bit is sent on a reverse packet data control channel to indicate whether the mobile station has enough power and data to increase its data transmission rate on a reverse packet data channel.*

*Id.* col. 20 ll. 5–8, 16–22 (emphasis added). The only claim limitation of the '653 patent disputed in this appeal is the "increase availability bit" ("IAB") limitation of independent claims 34 and 37, which signals if the mobile station has enough power and data to enable an increase in its data transmission rate. *Id.* col. 20 ll. 16–22.

The '643 patent claims priority from three Korean Applications, two of which are relevant to this appeal: 2001-0006839 ("the '6839 application," dated February 12, 2001), and 2001-0057600 ("the '57600 application," dated September 18, 2001). *See* J.A. 73. The '6839 application teaches how a mobile station's data transmission rate can be improved through a "reverse activity bit" ("RAB") sent on the reverse link. J.A. 2494. The '6839 application also discloses a reverse rate indicator ("RRI") used to inform a base station that a mobile station's data transmission rate has changed. *E.g.*, J.A. 2501. The '57600 application teaches a bit used to signal if a mobile station has a sufficient power margin and data to increase its data transmission rate—*i.e.*, an IAB. J.A. 2533.

Honeywell International Inc., Sierra Wireless, Inc., TCL Communication Technology Holdings Limited, TCT Mobile International Limited, TCT Mobile, Inc., TCT Mobile (US) Inc., TCT Mobile (US) Holdings, Inc., and Telit Cinterion Deutschland GmbH (collectively "Honeywell") petitioned for *inter partes* review ("IPR"), arguing, among other things, that claims 34–40 of the '653 patent would

have been obvious over "Effective Reverse Link Data Rate Control for 1xEV-DV – r2," *see* J.A. 1077–91 ("Samsung"), a slide deck that was presented at a May 7, 2001 industry working group which the parties do not dispute discloses an IAB, *see* J.A. 1081.

The timeline below shows key events relevant to this appeal:



As shown, Samsung pre-dates the '57600 application and post-dates the '6839 application. Therefore, if the '653 patent satisfies the requirements for claiming priority from the '6839 application, *see* 35 U.S.C. § 120 (permitting patents to obtain the benefit of an earlier foreign application's filing date), Samsung cannot qualify as prior art. But if the '653 patent does not meet the requirements for claiming priority from the '6839 application, then Samsung can qualify as prior art because it pre-dates the '57600 application.

Honeywell argued in its pre-institution briefing that the '653 patent was not entitled to the '6839 application's priority date because the '6839 application does not provide sufficient written description support for the IAB limitation. J.A. 369–70. And because Samsung discloses an IAB and qualifies as prior art, Honeywell argued that

Samsung, together with other references, would have rendered obvious the challenged claims of the '653 patent. J.A. 236–37, 249.

In its pre-institution briefing, 3G argued the contrary, contending that a person of ordinary skill in the art would have understood the RRI disclosed in the '6839 application to indicate whether the mobile station has sufficient power and data to enable an increase in its data rate—*i.e.*, that the RRI would have been understood to function as an IAB. J.A. 384–87.  Therefore, in 3G's view, the '653 patent is entitled to the '6839 application's priority date, rendering Samsung unavailable as prior art.  3G supported its argument with slide 8 of Samsung, which it contended demonstrates that an RRI can function as an IAB.  Slide 8 provides two examples of "IAB setting," including: (1) "[r]edefining RRI[s]," and, (2) "add[ing]" an IAB to an RRI. J.A. 387; J.A. 1084 (Slide 8 of Samsung).

In its decision instituting the IPR, the Board disagreed that the RRI disclosed in the '6839 application provided sufficient written description for the IAB limitation and also disagreed that slide 8 supported 3G's contention. J.A. 435–40.  Accompanying its Institution Decision, the Board provided a scheduling order stating that "[3G] is cautioned that any arguments for patentability not raised in the [post-institution] response may be deemed waived." J.A. 466.

In the post-institution proceedings, Honeywell maintained that the '6839 application did not provide written description support for the IAB limitation. J.A. 582–91. Likewise, 3G maintained its argument to the contrary, that a person of ordinary skill in the art would have understood that the RRI disclosed in the '6839 application indicates whether a mobile station has sufficient power and data to increase its data transmission rate, thus providing written description support for the IAB limitation.   J.A. 535–37.   And again, 3G made

supporting arguments that slide 8 of Samsung confirms that a person of ordinary skill in the art would have understood that the RRI disclosed in the '6839 application could function as an IAB. J.A. 529–30. Post-institution, however, 3G's slide 8 argument was slightly different: 3G contended that slide 8 confirms that an RRI can be *adapted* to function as an IAB. J.A. 530.

The Board concluded that the RRI disclosed in the '6839 application did not provide sufficient written description support for the '653 patent's IAB limitation. *Decision* at *11–16. Furthermore, the Board determined that 3G had waived its argument relying on slide 8. *Id.* at 16. The Board explained that because 3G's pre-institution slide 8 argument was materially different from its post-institution slide 8 argument, the argument was waived. *Id.* Nevertheless, the Board addressed the merits of 3G's slide 8 argument, concluding that slide 8 did not support 3G's contention that the RRI disclosed in the '6839 application provided written description support for the '653 patent's IAB limitation. *Id.* at 16 n.6.

3G timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

3G raises two main arguments on appeal. First, 3G argues that the Board erred by holding its argument relying on slide 8 of Samsung waived. Second, 3G argues that when slide 8 is properly considered, substantial evidence does not support the Board's finding that the '6839 application lacks sufficient written description support for the IAB limitation.

## I

We begin with waiver. The Board found 3G's slide 8 argument waived pursuant to the rule set out in the Board's Trial Practice Guide: that "[o]nce a trial is instituted, the Board may decline to consider arguments

set forth in a preliminary response unless they are raised in the patent owner response." *Decision* at \*16. The Board also cited this court's decision, *In re Nuvasive, Inc.*, 842 F.3d 1376, 1381 (Fed. Cir. 2016), in support. *Decision* at \*16. 3G argues that this was error for two reasons. First, 3G asserts that the Board's waiver rule conflicts with the IPR statutes. And second, 3G contends that the Board incorrectly applied *Nuvasive*. We address each argument in turn.

Looking at the IPR statutes, 3G first points to 35 U.S.C. § 313, which states that "[i]f an inter partes review petition is filed . . . the patent owner shall have the right to file a *preliminary response* to the petition" (emphasis added). 3G then points to 35 U.S.C. § 316(a)(8), which instructs the Director of the USPTO to prescribe regulations "providing for the filing by the *patent owner of a response to the petition under section 313 after an inter partes review has been instituted*, and requiring that the patent owner file with such response . . . any *additional factual evidence and expert opinions* on which the patent owner relies in support of the response" (emphases added). In 3G's view, because a patent owner is required to file "additional factual evidence and expert opinions" post-institution, the statutes must be read to mean that a patent owner's pre- and post-institution response should be read together as a single, unitary whole. 3G's Br. 27–28. That is, according to 3G, arguments raised in a patent owner's pre-institution response are necessarily incorporated into the post-institution response. Therefore, 3G argues that the Board's waiver rule conflicts with controlling statute by requiring patent owners to re-raise arguments from their pre-institution briefing post-institution.

We disagree. It is a non-sequitur that because a patent owner must proffer new evidence and expert opinions post-institution, arguments raised in the pre-institution response are necessarily incorporated into the post-institution response. No text in the statutes requires such

a reading. On the contrary, the statutes upon which 3G relies explicitly state that a patent owner's pre- and post-institution responses are distinct papers. *Compare* 35 U.S.C. § 313 (discussing a patent owner's "preliminary response"); *with* 35 U.S.C. 316(a)(8) (discussing a patent owner's response . . . after an inter parties review has been instituted). The Board's waiver rule therefore comports with the IPR statutes.

As for *Nuvasive*, 3G argues that that case holds only that a patent owner waives an argument made in its pre-institution response when the patent owner: (1) fails to raise the argument again in its post-institution response, *and* (2) expressly abandons that argument post-institution. 3G's Br. 25–26. Because it never expressly abandoned its slide 8 argument, 3G argues that the Board erroneously applied *Nuvasive* here. Again, we disagree.

In *Nuvasive*, the patent owner's pre-institution response challenged the public accessibility of the prior art references put forth by the petitioner. 842 F.3d 1376, 1380. The Board was not persuaded by those arguments and instituted IPR. *See id.* As here, the Board's scheduling order accompanying the institution decision provided that "[t]he patent owner is cautioned that any arguments for patentability not raised and fully briefed in the response will be deemed waived." *Id.* at 1381. In its post-institution briefing, the patent owner did not make any arguments concerning the public accessibility of the asserted prior art and confirmed that it was abandoning the argument at an oral hearing. *Id.* at 1380–81. On appeal, we held that because the patent owner "no longer contested the public accessibility of the prior art references" post-institution, those arguments were waived. *Id.* at 1381. Although we noted that the patent owner's counsel confirmed at the oral hearing that the patent owner was no longer pursuing its public accessibility arguments post-institution, our holding did not require the patent owner to expressly abandon the argument for it to be waived. *See id.*

Here, 3G made an argument relying on slide 8 in its pre-institution response. 3G specifically contended that "slide 8 . . . recognizes that an indicator bit such as the RRI can indicate whether the mobile station has enough power and data to increase the data transmission rate." J.A. 349. Put differently, 3G argued that slide 8 established that an RRI—on its own—can function as an IAB. Likewise, in 3G's pre-institution sur-reply, 3G contended that "Samsung's eighth slide" supported its assertion that the '6839 application's "disclosure of an RRI would be sufficient for a [person of ordinary skill in the art] to understand [the IAB limitation] described in the claims of the '653 patent." J.A. 386–87. And just as in *Nuvasive*, the Board's Institution Decision was accompanied by a scheduling order warning that any arguments 3G does not re-raise in its post-institution briefing may be waived. J.A. 466.

But 3G's argument relying on slide 8 changed post-institution. In its post-institution response, 3G did *not* contend that a person of ordinary skill in the art would have understood that an RRI itself can function as an IAB. Rather, 3G argued in its post-institution response that a person of ordinary skill in the art would have understood the RRI disclosed in the '6839 application to function as an IAB because slide 8 states that an RRI can be "*redefined*" or "*add[ed] [to]*" in order to function as an IAB—*i.e.*, that an RRI must be modified to function as an IAB. J.A. 530. The same is true of 3G's post-institution sur-reply, in which it stated "[a]s can be plainly seen in Samsung, slide 8, RRI is referenced for both examples of so-called 'IAB *setting*' [referring to RRI redefinition] [and] . . . even '*adding* a dedicated bit' relies on using RRI." J.A. 631.

Accordingly, because 3G did not maintain the argument it brought pre-institution, *i.e.*, that slide 8 confirms that an RRI can itself function as an IAB, in its post-institution briefing, the Board did not err in finding 3G's slide argument to be waived pursuant to its Trial Practice Guide and *Nuvasive*.

10      3G LICENSING, S.A. v. HONEYWELL INTERNATIONAL INC.

Because we conclude that the Board did not err in holding that 3G waived its slide 8 argument, we need not address whether the Board erred in finding the '6839 application lacks written description support in light of slide 8. Nevertheless, for the sake of thoroughness, we proceed to address 3G's arguments as to that issue as if there were no waiver and conclude that substantial evidence supports the Board's finding for lack of written description.

## II

For a claim to be entitled to the "the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997). Each application in the chain must therefore "reasonably convey[] to those skilled in the art that the inventor had possession of the [later-claimed] subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). "Sufficiency of written description is a question of fact, reviewed for substantial evidence." *Gen. Hosp. Corp. v. Sienna Biopharms., Inc.*, 888 F.3d 1368, 1371 (Fed. Cir. 2018).

As noted, the '6839 application teaches how a cellphone's data transmission rate can be improved through an RAB sent on the reverse link and discloses an RRI which is used to inform a base station that a cellphone's transmission data rate has changed. J.A. 2494, 2501. The Board found that a person of ordinary skill in the art would not have understood the RRI disclosed in the '6839 application to function as an IAB and therefore that the '653 patent is not entitled to the '6839 application's priority date. *Decision* at *11–16. That finding was supported by substantial evidence.

As the Board recognized, there is nothing "in the '6839 application that actually discloses, either expressly or inherently, that the mobile station uses information about its power and data to make a decision about whether it can increase its data transmission rate," as the claims require. *Id.* at *12. The Board relied not only on the '6839 application itself, but also on the testimony of Honeywell's expert, who stated that a person of ordinary skill in the art would have not understood the RRI disclosed in the '6839 application to function as an IAB. *See id.* at *11–12.

3G contends that the Board's conclusion was erroneous because slide 8 "confirms" that a person of ordinary skill in the art would have understood that the RRI disclosed in the '6839 application can function as an IAB. 3G Brief at 29–30. But slide 8 teaches that an RRI can function as an IAB only when an RRI is "redefined" or "added" to an IAB. That the RRI disclosed in the '6839 application must be modified to function as an IAB is not sufficient to satisfy the written description requirement. As we have explained, "[e]ntitlement to a filing date does not extend to subject matter which is not disclosed. . . . Rather, a prior application *itself* must describe an invention." *Lockwood*, 107 F.3d at 1572–73 (emphasis added).

The Board's finding that the '653 patent lacks written description support for the IAB limitation was therefore supported by substantial evidence.

## CONCLUSION

We have considered 3G's remaining arguments and find them unpersuasive. For the reasons set forth above, we *affirm* the Board's final written decision.

## **AFFIRMED**